**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CARRIE COLLINS, an individual, on behalf of himself and all others similarly situated,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>AUROBINDO PHARMA USA, INC.; and AUROBINDO LTD.;<br><br>　　　　　　　　　　Defendants. | Case No.: 3:19-cv-00688-MMA-KSC<br><br>**ORDER DENYING PLANTIFF'S MOTION TO REMAND AND GRANTING IN PART DEFENDANT'S MOTION TO STAY**<br><br>[Doc. Nos. 5, 6] |

　　　　Plaintiff Carrie Collins ("Plaintiff") filed this putative class action against Defendants Aurobindo Pharma USA ("Aurobindo USA") and Aurobindo LTD, (collectively, "Defendants") in the Superior Court of California, County of San Diego. *See* Doc. No. 1-2, Ex. A (hereinafter "Compl."). On April 15, 2019, Aurobindo USA removed the action to this Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).[1] *See* Doc. No. 1.

　　　　On May 15, 2019, Plaintiff filed a motion to remand this action back to state court. *See* Doc. No. 5. Aurobindo USA then filed an opposition, to which Plaintiff replied. *See*

---

[1] Aurobindo LTD has not filed a responsive pleading. *See* Docket.

1

Doc. Nos. 14, 15.  On May 22, 2019, Aurobindo USA filed a motion to stay proceedings pending a decision by the Judicial Panel on Multidistrict Litigation ("JPML").  *See* Doc. No. 6.  Plaintiff subsequently filed an opposition.  *See* Doc. No. 13.  Aurobindo USA did not file a reply.  *See* Docket.

The Court found the matters suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1.  *See* Doc. No. 16.  For the reasons set forth below, the Court **DENIES** Plaintiff's motion to remand and **GRANTS IN PART** Aurobindo USA's motion to stay.

## BACKGROUND

On or about November 24, 2018, Plaintiff, a California resident, was prescribed the prescription drug Valsartan-HCTZ 320-12.5 manufactured by Defendants.  *See* Compl. ¶¶ 2, 17.  On December 31, 2018, Defendants recalled 80 lots of valsartan-containing medications including Valsartan, Valsartan HCTZ, and Amlodipine Valsartan ("Valsartan").  *See* Doc. No. 1-3, ¶ 9; Compl. ¶ 3.

On March 11, 2019, Plaintiff filed this putative class action in San Diego Superior Court, alleging three claims for relief: (1) violation of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1770(a)(5), 1770(a)(7); (2) breach of implied warranty under California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1792, 1791.1; and (3) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200.  *See* Compl.  Plaintiff defines the proposed class as "[a]ll persons or entities who purchased or used Defendants' contaminated Valsartan in California."  *Id*. ¶ 17.

Defendant removed the action to this Court on April 15, 2019.  *See* Doc. No. 1. Subsequently, Plaintiff filed the instant motion to remand.  *See* Doc. No. 5.  Aurobindo USA filed an answer on June 25, 2019.  *See* Doc. No. 17.

On April 17, 2019, Aurobindo USA filed a Notice of Potential Tag-Along Action with the JPML.  *See* Doc. No. 6-1, Ex. B.  Pursuant to that notice, the JPML entered a Conditional Transfer Order ("CTO") on April 19, 2019, indicating that this action would be transferred to an existing multi-district litigation ("MDL") in the District of New

Jersey, *In re: Valsartan Products Liability Litigation*, MDL No. 2875 ("Valsartan MDL"), unless parties object to the transfer. *See* Doc. No. 6-1, Ex. C.  On April 26, 2019, Plaintiff filed a notice of opposition to the CTO, and later filed a motion to vacate or stay the CTO pending this Court's decision on the instant motion to remand to state court. *See* Doc. No. 6-1, ¶¶ 12, 14.  As such, the motion to vacate the CTO, the motion to remand, and the motion to stay the action in this Court are all fully briefed.

### ORDER OF MOTIONS

In the interest of judicial efficiency, courts generally "address subject matter jurisdiction at the outset in the 'mine run of cases,' and reach other issues first only where the jurisdictional issue is 'difficult to determine,' and the other ground is relatively less burdensome." *Potter v. Hughes*, 546 F.3d 1051, 1061 (9th Cir. 2008).  Further, the pendency of a CTO or motion before the JPML "does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court." *See* J.P.M.L. Rule 2.1(d); *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997) (noting that a court should not automatically stay a case or suspend rulings upon a party's motion before the JPML).

The sole jurisdictional issue before the Court is whether it has jurisdiction pursuant to CAFA. *See* Doc. No. 5-1.  Thus, it is not so difficult to determine that a decision should be deferred to the JPML. *See Conroy v. Fresh Del Monte Produce Inc.*, 325 F. Supp. 2d 1049, 1053 (N.D. Cal. 2004) (finding a court should wait until transfer to an MDL if jurisdictional issues are legally difficult).  This Court accordingly addresses Plaintiff's remand motion prior to addressing Aurobindo USA's motion to stay.

### MOTION TO REMAND

A.  **Legal Standard**

"As a general matter, defendants may remove to the appropriate federal district court 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction.' 28 U.S.C. § 1441(a).  The propriety of removal thus depends on whether the case originally could have been filed in federal court." *City of*

*Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997). The "propriety of removal" in this case arises under "CAFA[, which] gives federal courts jurisdiction over certain class actions, defined in § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 552 (2014).

A notice of removal must contain a "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). There is no presumption against removal jurisdiction in CAFA cases. *Dart*, 135 S. Ct. at 554 (noting "CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.") (internal quotations omitted). The burden of establishing removal jurisdiction under CAFA lies with the proponent of federal jurisdiction. *See Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015).

"[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart*, 135 S. Ct. at 553. "Evidence establishing the amount is required" where, as here, the plaintiff challenges the defendant's amount in controversy assertion. *Id* at 554 (citing 28 U.S.C. § 1446(c)(2)(B)). "Under the preponderance of the evidence standard, a defendant must establish 'that the potential damage could exceed the jurisdictional amount.'" *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1149 (S.D. Cal. 2018) (quoting *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014)).

**B.  Discussion**

The Court must determine whether Aurobindo USA has shown by a preponderance of the evidence that the action involved more than 100 plaintiffs and that the amount in controversy exceeds $5 million. Plaintiff argues the Court lacks jurisdiction for three reasons: (1) Aurobindo USA's notice of removal was insufficient; (2) Aurobindo USA has not shown by a preponderance of the evidence that the class exceeds 100 members; and (3) the amount in controversy does not exceed $5 million. *See generally* Doc. No. 5-

1. Plaintiff does not challenge minimal diversity. *See id.* The Court addresses each argument in turn.

### 1. Initial Burden

First, Plaintiff asserts that Aurobindo USA's notice of removal did not meet its initial burden of establishing that the amount in controversy exceeds $5 million. *See* Doc. No. 5-1 at 2. In support, Plaintiff explains that, "Defendants' evidence is speculative, conclusory, and lacks foundation." *Id.* The Supreme Court has made clear that in a notice of removal, "[a] statement 'short and plain' need not contain evidentiary submissions." *Dart*, 135 S. Ct. at 551. "Evidence establishing the amount [in controversy] is required by § 1446(c)(2)(B) *only when* the plaintiff contests, or the court questions, the defendant's allegation." *Id.* at 554 (emphasis added).

In its notice of removal, Aurobindo USA avers that the amount in controversy exceeds $5 million based upon the potential class size and Plaintiff's prayer for relief. *See* Doc. No. 1 at 5. Thus, Aurobindo USA provided a "short and plain statement of the grounds for removal." Moreover, Aurobindo USA was not obligated to submit evidence in support of its notice of removal. 28 U.S.C. § 1446(a); *see also Dart*, 135 S. Ct. at 554. Accordingly, Aurobindo USA met its initial burden in removing the instant action.

### 2. Class Size

Second, Plaintiff asserts that Aurobindo USA's "speculation as to class membership is unsustainable for purposes of removal under CAFA." Doc. No. 5-1 at 4. In its notice of removal, Aurobindo USA stated that "the Class in this case is potentially tens of thousands of members strong, and almost certainly greater than 100 individuals." Doc. No. 1 at 4. Plaintiff argues that Aurobindo USA's class size calculations are "not very plausible." Doc. No. 15 at 3. According to Plaintiff, based on the number of pills distributed in California, "the class size would have to be at least 114,235 individuals." Doc. No. 15 at 4. To reach this number, Plaintiff divides the quantity of pills distributed in California by 270—the number of pills Plaintiff was prescribed during the class period. *See* Doc. No. 15 at 3. However, Plaintiff neither explains why that class size is

considered "implausible," nor why each class member must have taken no more than 270 pills during the class period. *See id.* Thus, Plaintiff's argument is speculative and unsupported by any evidence or citation to legal authority.

Further, Plaintiff's argument assumes that only persons are included in the putative class. This is inconsistent with Plaintiff's class definition, which includes "persons and entities." Compl. ¶ 17; *see In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 120 n.1 (Ct. App. 2009) (indicating that a putative class of "persons and entities" is permissible for violations of the UCL, CLRA, and breach of implied warranty if the class action requirements are met). Even assuming the class only included persons, Aurobindo USA proffered credible evidence that there are more than 100 individuals in the class. Aurobindo USA submitted the declaration of Hunter Murdock, Vice President, General Counsel of Aurobindo Pharma, USA. *See* Doc. No. 14-3 (hereinafter "Murdock Decl."). Mr. Murdock declares over 36 million tablets were distributed in California, and that, based on his knowledge and experience as the Vice President and general counsel of a pharmaceutical company, each of the three types of Valsartan tablets were distributed to more than 100 individuals. Murdock Decl. ¶¶ 13, 15, 17. Plaintiff objects to Mr. Murdock's declaration on the grounds that it "lacks foundation" and is not based on "personal knowledge." *See* Doc. No. 15 at 3. In ruling on a motion to remand, courts consider "real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198. The evidence must be "summary-judgment-type evidence," such as affidavits or declarations provided by the removing defendant. *Singer v. State Farm Mut. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997); *see Moreno v. Ignite Rest. Grp.*, No. C 13-05091 SI, 2014 U.S. Dist. LEXIS 37035, at *11, *20 (N.D. Cal. Mar. 20, 2014) (finding a declaration sufficient to establish the number of class members). At the summary judgment stage, district courts consider evidence with content that would be admissible at trial, even if the form of the evidence would not be admissible at trial. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *Block v. City of Los Angeles*, 253 F.3d

410, 418-19 (9th Cir. 2001). Here, the content of the declaration in another form could be admissible at trial. Additionally, Plaintiff does not submit any proof or even argue that the class size is fewer than 100 members. Thus, Aurobindo USA has shown by a preponderance of the evidence that the class size exceeds 100 members. *See Dart*, 135 S. Ct. at 554 (explaining that when a defendant's assertion is challenged, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied").

### 3. Amount in Controversy

Finally, Plaintiff argues Aurobindo USA has not established "by a preponderance of the evidence that the amount in controversy exceeds $5,000,000." Doc. No. 5-1 at 3. Plaintiff contends that actual damages, replacements costs, and disgorgement of profits would only yield "a total of $1,174,500." Doc. No. 5-1 at 6. According to Mr. Murdock, the replacement cost for recalled medication would total "in excess of $11,000,000 . . . before consideration of any other category of damages sought by plaintiff including statutory penalties, punitive damages, and attorney's fees." Doc. No. 14-3 at 3. The parties agree that an estimate of replacement cost damages can be calculated by multiplying the number of tablets distributed in California by the estimated replacement cost for each variation of Valsartan.

First, the Court determines the number of tablets distributed in California for each variation of Valsartan. Plaintiff asserts that the Court cannot determine the number of tablets at issue because Aurobindo USA has not shown how many of those tablets were distributed to persons. *See* Doc. No. 5-1; Doc. No. 15. However, as discussed previously, Plaintiff defines the putative class as "[a]ll persons or entities who purchased or used Defendants' contaminated Valsartan in California." *See* Compl. ¶ 17. Because Plaintiff includes "entities" in the proposed class, all tablets distributed to California are relevant to the amount in controversy.

Aurobindo USA provides evidence that more than 36.5 million tablets were distributed in California during the relevant time frame. *See* Murdock Decl. ¶¶ 11-16.

Specifically, Mr. Murdock declares that 30,843,360 tablets of Valsartan; 5,505,660 tablets of Valsartan HCTZ; and 180,000 tablets of Amlodipine Valsartan were delivered to California during the class period. *Id.* As such, Aurobindo USA has shown by a preponderance of the evidence that 36.5 million tablets were distributed in California during the relevant time frame.

Second, the Court must determine the replacement cost for each variation of the Valsartan tablets. Plaintiff argues that the Medicaid Federal Upper Limit ("FUL") is "a good proxy for the class" in determining the value of each tablet. Doc. No. 5-1 at 6. Plaintiff further contends the FUL for Valsartan HCTZ 320 mg/12.5 mg is $0.29 per tablet, and that this valuation should be used to calculate the replacement cost damages. *Id.* Notably, Plaintiff neither cites legal authority nor provides evidence that the FUL for Valsartan HCTZ 320 mg/12.5 mg is $0.29 per tablet. *See id.* Conversely, Aurobindo USA explains that the FUL varies depending on the type and dosage of each tablet. Doc. No. 14 at 5. In addition, Aurobindo USA proffers evidence demonstrating the FUL value for each variation and dosage of Valsartan at issue, as of December 2018. *See* Murdock Decl. ¶ 27. According to Mr. Murdock, the cost of one tablet of Valsartan varies from $0.45 to $1.19. *See id.* Plaintiff does not argue these FUL prices are inaccurate.[2] *See* Doc. No. 15 at 4-5. As such, the preponderance of the evidence supports the FUL valuations provided by Aurobindo USA.

As indicated previously, the Court multiplies the quantity of tablets by the FUL value for each variation and dosage of Valsartan to estimate replacement cost damages. Based on the preponderance of the evidence, the estimated replacement cost damages amount to $24,372,901.48 as follows:

---

[2] Instead, Plaintiff argues Aurobindo USA's calculation of damages using a separate valuation – the National Average Drug Acquisitions Costs ("NADAC") – does not exceed $5 million. Doc. No. 15 at 4-5. However, Aurobindo USA does not argue the Court should use the NADAC price, and Plaintiff argues the FUL is a "good proxy" to calculate damages. *See* Doc. Nos. 5-1 at 6; 14 at 4-6. In any event, the Court notes that Plaintiff's proposed FUL would also result in replacement cost damages in excess of $5 million ($0.29 x 36.5 million=$10.5 million).

| Medication & Dose | Quantity | FUL | Est. Replacement Cost |
|---|---|---|---|
| Valsartan 40 mg | 2,815,200 | $ 0.543144 | $ 1,529,058.99 |
| Valsartan 80 mg | 7,948,800 | $ 0.637534 | $ 5,067,630.26 |
| Valsartan 160 mg | 13,085,280 | $ 0.684268 | $ 8,953,838.38 |
| Valsartan 320 mg | 6,994,080 | $ 0.824999 | $ 5,770,109.01 |
| Valsartan HCTZ 320 mg/12.5 mg | 926,460 | $ 0.523385 | $ 484,895.27 |
| Valsartan HCTZ 160 mg/12.5 mg | 1,594,080 | $ 0.519986 | $ 828,899.28 |
| Valsartan HCTZ 320 mg/25 mg | 1,352,160 | $ 0.581555 | $ 786,355.41 |
| Valsartan HCTZ 80 mg/12.5 mg | 721,440 | $ 0.544590 | $ 392,889.01 |
| Valsartan HCTZ 160 mg/25 mg | 911,520 | $ 0.453912 | $ 413,749.87 |
| Amlodipine Valsartan 5 mg/160 mg | 76,320 | $ 0.598834 | $ 45,703.01 |
| Amlodipine Valsartan 10 mg/160 mg | 21,600 | $ 0.711352 | $ 15,365.20 |
| Amlodipine Valsartan 10 mg/320 mg | 36,000 | $ 1.193140 | $ 42,953.04 |
| Amlodipine Valsartan 5 mg/320 mg | 46,080 | $ 0.899626 | $ 41,454.77 |
| | | TOTAL | $ 24,372,901.48 |

In light of the fact that the amount in controversy already exceeds $5 million, the Court declines to address the remaining arguments with respect to amount in controversy.

## C.  Conclusion

In review, Aurobindo USA has shown by a preponderance of the evidence that there are more than 100 class members and the amount in controversy exceeds $5 million. As such, the Court **DENIES** Plaintiff's motion to remand.

## MOTION TO STAY

Aurobindo USA moves the Court to stay all proceedings in this action until either "30 days after the JPML has ruled [on Plaintiff's motion to vacate the CTO], if the JPML denies transfer" or "the date set by the transferee court, if the JPML grants transfer." Doc. No. 6-1 at 5.

The Court's power to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). When determining whether to stay proceedings pending a JPML transfer, courts evaluate factors such as "(1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that

would be saved by avoiding duplicative litigation if the cases are in fact consolidated." *Rivers*, 980 F. Supp. at 1360. Whether to stay an action is a matter entrusted to the discretion of the district court. *See Landis*, 299 U.S. at 254-55 ("How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.").

Aurobindo USA avers that staying the action "would serve the principle aims of multidistrict litigation—preserving resources of the courts and litigants and avoiding inconsistent decisions on the same pretrial issues—by allowing a single transferee court to coordinate discovery and to consider the common legal and factual pretrial issues together and issue consistent rulings on such issues." Doc. No. 6-1 at 6. Additionally, Aurobindo USA contends "consistence and economy will be served" by preventing duplicative actions, such as answering or otherwise responding to Plaintiff's complaint and engaging in other pretrial matters, such as discovery. *Id.* Plaintiff counters that imposing an indefinite stay would not promote judicial efficiency and would prejudice Plaintiff. Doc. No. 13 at 4-5. Plaintiff also asserts that Aurobindo USA will not be prejudiced if a stay is denied. *Id.* at 5-6. However, the bulk of Plaintiff's argument is directed at Plaintiff's motion to remand and Aurobindo USA's deadline to file an answer.[3] *See id.* at 4-6.

Here, the motion to vacate the CTO is fully briefed, this Court has resolved Plaintiff's motion to remand, and Aurobindo USA has already filed an answer to Plaintiff's complaint. *See* Doc. No. 6-1 at 5; *see also* Doc. No. 17. Thus, a stay will not prejudice Plaintiff with respect to the motion to remand or responsive pleading deadline. Additionally, as the motion to vacate the CTO is fully briefed, the stay will be of limited duration, and it is unlikely that any damage will result from the granting of a stay.

---

[3] Plaintiff asserts that an action removed from state court "solely under CAFA . . . cannot be transferred to an MDL." Doc. No. 15 at 2 (citing *In re: Darvocet*, 939 F. Supp. 2d 1376, 1377 (J.P.M.L. 2013)). Plaintiff is incorrect. The JPML in *In re: Darvocet* held that CAFA limited the JPML's authority to transfer actions removed as "mass actions." *In re: Darvocet*, 939 F. Supp. 2d at 1378-81. In fact, the JPML noted that "CAFA was intended . . . to expand access to federal multidistrict litigation for such newly-removable [class] actions." *Id.* at 1378. This case is not a mass action and this case can be transferred to an MDL.

Further, a stay will save both party and judicial resources with respect to discovery and other pretrial proceedings.  Finally, deference to the JPML allows for the uniformity, consistency, and predictability in litigation that underlies the MDL system.  *See* 28 U.S.C. § 1407.

Accordingly, the Court finds a stay is warranted pending the JPML's ruling on Plaintiff's motion to vacate the CTO.  Therefore, the Court **GRANTS IN PART** Aurobindo USA's motion to stay the case.

## CONCLUSION

Based on the foregoing, the Court **DENIES** Plaintiff's motion to remand (Doc. No. 5) and **GRANTS IN PART** Aurobindo USA's motion to stay (Doc. No. 6).  The case is **STAYED** pending the JPML's final determination on whether this case should be transferred to MDL No. 2875.  The stay will automatically lift upon the JPML's final order regarding transferring the matter to the District of New Jersey.

**IT IS SO ORDERED.**

Dated:  July 16, 2019

Hon. Michael M. Anello
United States District Judge